UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| NEW FORTUNE, INC., | : | |
| Plaintiff, | : | |
| | : | Case No.: 1:20-cv-04883 (DLC) (KNF) |
| - against - | : | |
| | : | |
| APEX LOGISTICS INTERNATIONAL (CN) LTD., | : | |
| AND AEROFLOT AIRLINES | : | |
| | : | |
| Defendants. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANTS' JOINT MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

Preliminary Statement................................................................................................ 1

Background ................................................................................................................ 2

Procedural History .................................................................................................... 3

Legal Standard .......................................................................................................... 4

Argument .................................................................................................................. 5

    The Amended Complaint Fails as a Matter of Law Because the Montreal Convention Exclusively Governs and Preempts All of Plaintiff's State Law Claims.................................. 5

    I    The Montreal Convention Applies to the Subject Shipment Because the Transportation was "International" as Defined by the Montreal Convention ................ 5

    II    The Montreal Convention Exclusively Governs This Action Because it Arises Delay of or Damage to Cargo During International Transportation by Air ................... 6

Conclusion ................................................................................................................ 7

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AIG Property & Casualty, Co.*, No. 15-cv-6316, 2016 WL 305053, at *4
(S.D.N.Y. Jan. 25, 2016)...................................................................................................6

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009)..................................................................................................4

*El Al Israel Airlines, Ltd. v. Tseng*,
525 U.S. 155 (1999).......................................................................................................5, 6

*Hayden v. Paterson*,
594 F.3d 150, 160 (2d Cir. 2010)......................................................................................4

*Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., Inc.*,
32 F.3d 697, 699 (2d Cir. 1994)........................................................................................4

*King v. Am. Airlines*,
284 F.3d 352, 356-57 (2d Cir. 2002).................................................................................6

*Lynch v. City of New York*,
952 F.3d 67. 72 (2d Cir. 2020)..........................................................................................4

*Paradis v. Ghana Airways Ltd.*,
348 F. Supp. 2d 106, 111 (S.D.N.Y. 2004).......................................................................6

*Sierra Club v. Con-Strux, LLC*,
911 F.3d 85, 88 (2d Cir. 2018)..........................................................................................4

*Vigilant Ins. Co. v. World Courier, Inc.*,
No. 07 CV 194, 2008 WL 2332343, at *4 (S.D.N.Y. June 4, 2008) ...................................5, 6, 7

**Other Authorities**

Convention for the Unification of Certain Rules Relating to International Carriage
by Air, concluded at Montreal, Canada, opened for signature on May 28,
1999, reprinted in S. Treaty Doc. 106-45, CCH Av. L. Rep. ¶ 27, 400-59,
1999 WL 33292734 (1999)..........................................................................................1, 5, 6

Federal Rule of Civil Procedure 12(b)(6) ..................................................................................1, 4

International Civil Aviation Organization, Current lists of parties to multilateral air law
treaties, https://www.icao.int/secretariat/legal/List%20of%20Parties/Mtl99_EN.pdf.
(last visited on October 23, 2020)....................................................................................5

U.S. CONST. art. VI, cl. 2 ...........................................................................................................5

## **Preliminary Statement**

Defendants AEROFLOT RUSSIAN AIRLINES (sued herein as "AEROFLOT AIRLINES" and hereinafter "Aeroflot") and APEX LOGISTICS INTERNATIONAL (CN) LTD. (hereinafter "Apex") (collectively "defendants"), by and through their respective attorneys, Condon & Forsyth LLP and Tisdale Law Offices LLC, respectfully submit this Memorandum of Law in support of their Joint Motion for an Order, pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissing the Amended Complaint for failure to state a claim upon which relief may be granted.

Plaintiff New Fortune, Inc. ("NFI"), alleges it hired Apex to arrange for air transportation of a consignment of facemasks from China to New York and that part of the shipment was delayed and damaged during transportation conducted by Aeroflot, causing Plaintiff to sustain economic damages. Plaintiff has asserted state law causes of action in contract and tort.

It is well-settled that the Montreal Convention,[1] a treaty of the United States, exclusively governs claims for damages arising from delay of or damage to goods during international air transportation, preempting all state law claims. Because Plaintiff's allegations arise from the delay of and damage to cargo during international air transportation from China to the United States, they fall squarely within the scope of the Montreal Convention. Accordingly, the Montreal Convention preempts all of Plaintiff's state law claims, and Plaintiff's Complaint should be dismissed.

---

[1] Convention for the Unification of Certain Rules Relating to International Carriage by Air, concluded at Montreal, Canada, opened for signature on May 28, 1999, reprinted in S. Treaty Doc. 106-45, CCH Av. L. Rep. ¶ 27, 400-59, 1999 WL 33292734 (1999).

<u>**Background**</u>

According to the Amended Complaint,[2] NFI purchased one million facemasks from a trading company (the "Consignor") located in China.  *See* Am. Compl. [Dkt. 24], attached as Exhibit A to the Declaration of Anthony U. Battista, dated October 22, 2020 ("Battista Decl."), ¶ 10.  NFI paid Apex, a freight forwarder, to transport the masks from Changzhou, China, to New York.  *Id.* ¶ 12.

The Consignor allegedly directed Apex to transport the masks on a "direct flight" from China to New York on April 27, 2020, with an expected delivery date of April 29, 2020.  *Id.* ¶ 14.  NFI intended to then transport the masks by truck from New York to its vendee in California (the "Vendee"), which purportedly needed the masks by mid-May.  *Id.* ¶ 15.

Apex divided the masks into two shipments of 500,000 each.  *Id.* ¶ 24.  The first shipment would be transported on an Air China flight from Shanghai to New York.  *Id.*  The second shipment (the "Subject Shipment") would be transported from Shanghai to Moscow, followed by a flight to be operated by Aeroflot from Moscow to New York.  *Id.* ¶ 29.  While the first shipment arrived in New York on April 29, 2020, the Subject Shipment arrived in New York on May 19, 2020.  *Id.* ¶ 30.

NFI alleges that its Vendee refused to accept the late delivery of the Second Shipment of masks, and further that six of the crates comprising the Second Shipment were damaged.  *Id.* ¶ 31.  Finally, NFI alleges that its Vendee had placed a second order for two million (2,000,000) masks at or around the same time as the first order, but refused to accept this second order as a result of the delay in delivery of the Subject Shipment.  *Id.* ¶¶ 16, 33.  NFI seeks damages in the

---

[2] All facts in this Memorandum of Law are taken from Plaintiff's Amended Complaint, and are presumed true for purposes of this Motion to Dismiss.  Defendants do not admit these allegations and reserve the right to contest these allegations in accordance with the Federal Rules of Civil Procedure.

amount of $1,650,000 for manufacturing and shipping costs, and for lost profits for both orders. *Id.* ¶ 42.

Plaintiff has asserted three causes of action against both defendants: (1) breach of contract, (2) breach of bailment, and (3) negligence, as well as separate causes of action for breach of contract and estoppel against Apex.

### Procedural History

Plaintiff commenced this action by filing a Complaint on June 25, 2020. *See* Complaint [Dkt. 1], attached as Exhibit B to the Battista Decl. The Complaint alleged three causes of action against both Defendants arising from the delay of the Subject Shipment: (1) breach of contract; (2) breach of bailment; and (3) negligence. Following service of the Complaint, Aeroflot timely filed an Answer on September 14, 2020.

The Court held an initial pretrial conference on September 25, 2020.[3] During the conference, Defendants explained that Plaintiff's claims were preempted by the Montreal Convention.

Plaintiff then filed an Amended Complaint on October 2, 2020. The Amended Complaint is effectively the same as the Complaint, i.e. it alleges that the Subject Shipment was delayed, except it includes an additional sentence alleging that, "upon information and belief, at least six (6) crates of Masks in the Aeroflot Shipment were damaged." Am. Compl. ¶ 32. The Amended Complaint contains the same three causes of action as were alleged in the Complaint, as well as two new state law claims against Apex for breach of contract and estoppel.

---

[3] Defendant Apex's time to respond to the Complaint had not yet expired at the time of the initial pretrial conference.

## Legal Standard

A party may file a pre-answer motion to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true plaintiff's account of the facts in the complaint and draw all reasonable inferences therefrom in plaintiff's favor. *See Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., Inc.*, 32 F.3d 697, 699 (2d Cir. 1994). The court then determines whether the alleged facts, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotations omitted). "A complaint is . . . deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018) (internal citations omitted).

However, mere "conclusions of law or unwarranted deductions of fact" need not be accepted as true. *Lynch v. City of New York*, 952 F.3d 67. 72 (2d Cir. 2020) (internal citations omitted). On the contrary, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Rather, to survive a 12(b)(6) motion, the plaintiff's "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," dismissal is appropriate. *Iqbal*, 556 U.S. at 679.

**Argument**

**The Amended Complaint Fails as a Matter of Law Because the Montreal Convention
Exclusively Governs and Preempts All of Plaintiff's State Law Claims**

**I**

**The Montreal Convention Applies to the Subject Shipment Because
the Transportation was "International" as Defined by the Montreal Convention**

The Montreal Convention applies to "all international carriage of persons, baggage or cargo performed by aircraft for reward."  Montreal Convention, art. 1(1).  As a treaty of the United States, the Montreal Convention is the supreme law of the land.  *See* U.S. CONST. art. VI, cl. 2; *see also El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 167 (1999).   Article 1(2) of the Montreal Convention defines "international carriage" as including:

> any carriage in which, according to the agreement between the parties, the place of departure and the place of destination, whether or not there be a break in the carriage or a transshipment, are situated . . . . within the territories of two States Parties . . . .

Montreal Convention, art. 1(2).

In other words, the Montreal Convention applies to international transportation where the original place of departure and the final place of destination are within two State Parties to the Montreal Convention.  *See Vigilant Ins. Co. v. World Courier, Inc.*, No. 07 CV 194, 2008 WL 2332343, at *4 (S.D.N.Y. June 4, 2008).

In this case, the Subject Shipment was transported from China to the United States.  Am. Compl. ¶ 25.  Both China and the United States are State Parties to the Montreal Convention.[4] Because the place of departure and the place of destination are State Parties to the Montreal Convention, plaintiffs' transportation was "international" as defined by Article 1 of the Montreal

---

[4] *See* International Civil Aviation Organization, Current lists of parties to multilateral air law treaties, https://www.icao.int/secretariat/legal/List%20of%20Parties/Mtl99_EN.pdf. (last visited on October 23, 2020)

5

Convention.  Accordingly, the Montreal Convention applies to the transportation and the Subject Shipment.

## II

### The Montreal Convention Exclusively Governs This Action Because it Arises From Delay of or Damage to Cargo During International Transportation by Air

The Montreal Convention and its predecessor, the Warsaw Convention, "created a comprehensive liability system to serve as the exclusive mechanism for remedying injuries suffered in the course of" international transportation of people, baggage, and cargo.  *King v. Am. Airlines*, 284 F.3d 352, 356-57 (2d Cir. 2002).[5]  Article 29 of the Montreal Convention provides:

> In the carriage of passengers, baggage and cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention…

Montreal Convention, art. 29.

"Courts interpret the Montreal Convention as having complete preemptive effect over claims within its scope." *Vigilant Ins. Co.*, 2008 WL 2332343, at \*4; *see also Tseng*, 525 U.S. at 161 (holding that the Convention "precludes passengers from bringing actions under local law," even when they are unable to establish liability under the Convention); *AIG Property & Casualty, Co.*, No. 15-cv-6316, 2016 WL 305053, at \*4 (S.D.N.Y. Jan. 25, 2016) (noting that "claims falling within the treaty's scope must comply with its terms for bringing a claim").

Article 19 of the Montreal Convention addresses an air carrier's liability in the event of delay of cargo and provides: "The carrier is liable for damage occasioned by delay in the carriage by air of passengers, baggage, or cargo."  Montreal Convention, art. 19.  Additionally, Article 18 of

---

[5] Because the Montreal Convention came into force more recently than the Warsaw Convention, courts rely on cases interpreting similar provisions of the earlier Warsaw Convention where the equivalent provision in the Montreal Convention is substantively the same. *See, e.g. Paradis v. Ghana Airways Ltd.*, 348 F. Supp. 2d 106, 111 (S.D.N.Y. 2004) (noting that the Montreal Convention and the Warsaw Convention "have substantially the same preemptive effect").

the Montreal Convention addresses an air carrier's liability in the event of damage to cargo and provides, *inter alia*:

>  (1)   The carrier is liable for damage sustained in the event of the destruction or loss of or damage to, cargo upon condition only that the event which caused the damage so sustained took place during the carriage by air.
>
>  …
>
>  (3)   The carriage by air within the meaning of paragraph 1 of this Article comprises the period during which the cargo is in the charge of the carrier.

In this case, Plaintiff alleges the Subject Shipment was delayed and damaged during the course of its transportation between China and the United States.  Accordingly, these claims are squarely within the scope of the Montreal Convention.

However, Plaintiff has not raised or asserted a claim against Defendants under the Montreal Convention.  Rather, the five causes of action alleged in the Amended Complaint seek relief under state tort and contract law.  Because the Montreal Convention "applies to all actions for damages to cargo shipped between member states" and provides the exclusive basis for recovery of damages (*Vigilant Ins. Co.*, 2008 WL 2332343, at *5), Plaintiff's state law claims are preempted and should be dismissed.

## Conclusion

For the foregoing reasons, Defendants AEROFLOT RUSSIAN AIRLINES and APEX LOGISTICS INTERNATIONAL (CN) LTD. respectfully request that the Court grant their Motion and dismiss the Amended Complaint, with prejudice, for failure to state a claim upon which relief may be granted.

Dated:     New York, New York
         October 23, 2020

Respectfully submitted,

CONDON & FORSYTH LLP

By _____

Anthony U. Battista (AB 0783)
abattista@condonlaw.com
Marissa N. Lefland (ML 8217)
mlefland@condonlaw.com
7 Times Square - 18th Floor
New York, New York 10036
Telephone: (212) 490-9100
Facsimile: (212) 370-4453

*Attorneys for Defendant*
*AEROFLOT RUSSIAN AIRLINES*

- and -

TISDALE LAW OFFICES LLC

By: /S/ *Timothy J. Nast*

Timothy J. Nast, Esq.
tnast@tisdale-law.com
200 Park Avenue, Suite 1700
New York, New York 10166
Telephone:  (212) 354-0025

*Attorneys for Defendant*
*APEX LOGISTICS INTERNATIONAL*
*(CN) LTD.*