```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                         :
NEW FORTUNE, INC.,                       :
                                         :
                          Plaintiff,     :      20cv4883 (DLC)
                                         :
               -v-                       :      OPINION AND ORDER
                                         :
APEX LOGISTICS INTERNATIONAL (CN) LTD.,  :
and AEROFLOT AIRLINES,                   :
                                         :
                          Defendants.    :
                                         :
----------------------------------------X
```

APPEARANCES:

For the plaintiff:
Louis J. Maione
Law Offices of Louis J. Maione
303 E. 57th Street, 30th Fl.
New York, NY 10022
917-549-5693

For defendant Apex Logistics International (CN) Ltd.
Timothy James Nast
Tisdale & Nast Law Office, LLC
200 Park Avenue
Suit 1700
New York, NY 10166
212-354-0025

For defendant Aeroflot Airlines
Anthony Battista
Marissa Lefland
Condon and Forsyth LLP (NYC)
7 Times Square
New York, NY 10036
212-370-4453

DENISE COTE, District Judge:

On October 23, 2020, an importer of goods brought common law claims against a common carrier and an airline due to a

delay in the delivery of the goods from China to New York and damage to the delivered goods. The two defendants -- Apex Logistics International (CN) LTD ("Apex") and Aeroflot Airlines ("Aeroflot") -- have moved to dismiss this action on the ground that its claims are preempted by the Montreal Convention. Their motion to dismiss is granted.

## Background

The following facts are taken from the FAC. The facts alleged in the FAC are taken to be true for purposes of this motion. Coal. for Competitive Elec. v. Zibelman, 906 F.3d 41, 48-49 (2d Cir. 2018).

New Fortune, Inc. ("NFI") is a New York corporation that imports goods from China. Apex, a Chinese corporation, operates as a common carrier and freight forwarder. Aeroflot is an airline operating out of Russia.

On April 17, 2020, NFI purchased one million face masks from Changzhou Leejade Import and Export Co., Ltd ("Changzhou"), a Chinese company. NFI paid Apex to transport those masks from China to the United States by air. On April 24, Apex picked up the face masks from Changzhou using a truck. Changzhou instructed Apex to ship the one million masks via a direct flight from China to New York on April 27. Apex was instructed to deliver the masks to NFI in New York by April 29. The first

batch of 500,000 masks arrived in New York on April 29 and was timely delivered thereafter to a buyer in Los Angeles.

The other 500,000 masks (the "second batch") were shipped from Pudong to Sheremetyevo Airport in Moscow, Russia, where they remained at the Moscow airport for over twenty days.  After that delay, they were shipped to JFK Airport on an Aeroflot flight.  Six crates of masks in the second batch were damaged.  Apex had placed the masks in the crates.  NFI's buyer refused to accept the late delivery of the second batch of masks.  In addition, after the second batch of masks reached New York on May 19, Apex refused to release those masks to NFI until NFI paid all freight charges in full.

On June 25, NFI filed a complaint alleging breach of contract, breach of bailment, and negligence against both defendants based on the delayed delivery of and damage to the second batch of masks.  On October 2, NFI filed an amended complaint ("FAC"), which added claims of negligence and estoppel against Apex.

On October 23, the defendants moved to dismiss the FAC in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).  The motion became fully submitted on November 20, 2020.

**Discussion**

The defendants argue that the Montreal Convention preempts NFI's state law claims. The Montreal Convention "governs the international transportation of persons, baggage, and goods by air." Ehrlich v. Am. Airlines, Inc., 360 F.3d 366, 391 (2d Cir. 2004). A group of over 120 nations adopted the Montreal Convention in May 1999 to replace the Warsaw Convention. Id. at 371 n.4. The Montreal Convention went into force in the United States in 2003.[1] Id. at 372. As a treaty of the United States, the Convention is "the supreme law of the land and trumps local law when it applies." Commercial Union Ins. Co. v. Alitalia Airlines, S.p.A., 347 F.3d 448, 456 (2d Cir. 2003). Article 29 of the Montreal Convention describes its preemptive effect, stating that, "[i]n the carriage of . . . cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention[.]" Convention for Int'l Carriage by Air, S. Treaty Doc. No. 106-45, Article 29 (May 28, 1999).

---

[1] When Congress executed the Montreal Convention, it recognized that the "new Montreal Convention represents the culmination of decades of efforts by the United States and other countries to establish a regime providing increased protection for international air travelers and shippers." Ehrlich, 360 F.3d at 371 n.4 (quoting S. Exec. Rep. No. 108-8, at 2 (2003)).

4

The Montreal Convention "applies to all international carriage of persons, baggage or cargo performed by aircraft for reward."  Id. at Article 1 § 1.  The Convention defines "international carriage" as "any carriage in which, according to the agreement between the parties, the place of departure and the place of destination, whether or not there be a break in the carriage or a transhipment, are situated . . . within the territories of two States Parties."  Id. at Article 1 § 2.

The Convention addresses both delay and physical damage claims.  It provides that a "carrier is liable for damage occasioned by delay in the carriage by air of . . . cargo."  Id. at Article 19.  A carrier is also "liable for damage sustained in the event of . . . damage to . . . cargo upon condition only that the event which caused the damage so sustained took place during the carriage by air."  Id. at Article 18 § 1.  The Convention defines "carriage by air" as comprising "the period during which the cargo is in the charge of the carrier."  Id. at Article 18 § 3.  While the Convention "does not extend to any carriage by land" generally, it does extend to carriage on land that "takes place in the performance of a contract for carriage by air, for the purpose of loading, delivery or transhipment."  Id. at Article 18 § 4.  In that case, "any damage is presumed, subject to proof to the contrary, to have been the result of an event which took place during the carriage by air."  Id.

5

NFI's FAC must be dismissed in its entirety because the Montreal Convention preempts NFI's state law claims.  China and the United States are parties to the Montreal Convention.[2]  NFI's claims arise from the international carriage of cargo -- the second batch of face masks -- by air from China to the United States.  Claims arising from either the delay in their delivery by air or the damage inflicted during their transportation by air must be brought pursuant to the Convention.

NFI makes several arguments in opposition.  NFI first argues that the Supreme Court has not ruled on whether the Montreal Convention completely preempts state law claims.  NFI also points to Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co., 522 F.3d 776, 781 (7th Cir. 2008), which held that the Warsaw Convention did not completely preempt state law.

While the Supreme Court and Second Circuit have not yet addressed whether the Montreal Convention preempts state law claims, they have held that the Warsaw Convention -- which used substantially similar preemptive language[3] -- preempts state law

---

[2] ICAO, Current List of Parties to Multilateral Air Law Treaties, Convention for the Unification of Certain Rules for International Carriage by Air, https://www.icao.int/secretariat/legal/List%20of%20Parties/Mtl99_EN.pdf.

[3] Article 24(1) of the Warsaw Convention provides that, "[i]n cases [involving damage to or delay of cargo], any action for damages, however founded, can only be brought subject to the

6

where it applies.  See El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng, 525 U.S. 155, 161 (1999); King v. Am. Airlines, Inc., 284 F.3d 352, 356–57 (2d Cir. 2002).  Indeed, the court in Sompo recognized that the "Warsaw Convention preempts local law causes of action to the extent that they are inconsistent with the Convention" but held that "auxiliary issues not addressed by the Convention . . . are left to domestic law."  522 F.3d at 781 (citation omitted).  The Montreal Convention, like the Warsaw Convention, preempts state law claims like those at issue here.  See Indem. Ins. Co. of N. Am. v. Expeditors Int'l of Washington, Inc., 382 F. Supp. 3d 302, 307 n.2 (S.D.N.Y. 2019) (collecting cases).

Next, NFI argues that Article 19 of the Montreal Convention does not apply to its delay claims because those claims are for nonperformance, and the Montreal Convention does not govern nonperformance.  This argument fails.  The FAC does not allege nonperformance.  The FAC explicitly claims damages occasioned by delay in delivery and physical damage to delivered goods.

Finally, NFI argues that Article 18 of the Montreal Convention does not cover claims arising from the damage to the

---

conditions and limits set out in this convention."  Convention for the Unification of Certain Rules Relating to 1 the International Transportation by Air. October 1, 1929, 49 Stat. 3000 (1934), T.S. No. 876, 137 L.N.T.S. 11, reprinted in 49 U.S.C. § 40105 (1997).

7

masks because, it speculates, the masks could have been damaged outside an airport. To the extent either of these defendants is liable for the damage to the masks, it is due to their role in shipping the masks by air. This is just as true for Apex as it is for Aeroflot. Any damage attributable to Apex, whether it occurred on the physical premises of an airport or not, occurred while it was transporting the masks for shipment by air.

## Conclusion

The defendants' October 23, 2020 motion to dismiss is granted. The Clerk of Court shall enter judgment for the defendants and close the case.

Dated:   New York, New York
         January 29, 2021

                              _____
                                       DENISE COTE
                              United States District Judge