**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

New Fortune, Inc.,

                       Plaintiff,

          -against-

Apex Logistics International (CN) Ltd., and
Aeroflot Airlines,

                   Defendants.

20 Civ. 04883


**MEMORANDUM OF LAW OF NEW FORTUNE, INC. IN REPLY**
**TO OPPOSITION TO MOTION FOR RECONSIDERATION**


**Law Offices of Louis J. Maione, Esq. (8589)**
**303 East 57th Street, 30th Floor**
**New York, N.Y. 10022**
**(917) 549-5693**
**Attorney for Plaintiff**

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

TABLE OF CASES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................. 1

LEGAL STANDARD FOR REVIEW ....................................................................... 1

    Defendants' Opposition ...................................................................................... 2

    Amending the Pleadings ..................................................................................... 3

    Specific Opposition to Instant Motion .............................................................. 10

    Apex's Memorandum ......................................................................................... 11

SUMMARY .......................................................................................................... 15

CONCLUSION ..................................................................................................... 15

<u>**TABLE OF CASES**</u>

<u>**Page**</u>

**Cases**

Bader v. Swissport, USA, Inc.
18-cv-06390 (E.D.N.Y. 9/30/2020) ................................................................ 16

Bonsey v. Kates,
13-Cv-2708 (RWS) (S.D.N.Y. 2013 WL 4494678) ...................................... 5

Brook v. Simon & Partners, LLP,
783 Fed. Appx. (2d Cir. 2019) ...................................................................... 5

Caterpillar Inc. v. Williams,
482 U.S. 386, 107 S. Ct. 2425, 96 L.Ed.2d 318 (1987) ............................... 11

Commercial Union v. Alitalia,
347 F. 3d 448 (2d Cir. 2003) .......................................................................... 13

Cypress Med. Ctr. Operating Co. v. Cigna Healthcare,
781 F.3d 182 (5th Cir. 2015) .......................................................................... 3

Greenwald v. Orb Commc'ns & Mktg., Inc.,
No. 00 Civ. 1939 (LTS) (HBP), 2003 WL 660844, at *1 (S.D.N.Y. Feb. 27, 2003) ................ 1

In re Gildan Activewear, Inc.
Sec. Litig., No. 08 Civ. 5048(HB), 2009 WL 4544287, at *2 (S.D.N.Y. Dec. 4, 2009) .......... 2

Indemnity Ins. Co. v. Expeditors,
382 F. Supp. 3d 302, fn. (S.D.N.Y. 2019) ..................................................... 11

Irabor v. Lufthansa Airlines,
427 F. Supp. 2d 222 (D. Mass. 2019) .............................................................. 7, 17

Jahanger v. Purolator,
615 F. Supp. 29 (E.D. Pa. 1985) .................................................................... 10

Johnson v. City of Shelby, Miss.,
574 U.S., 135 S. Ct. 346 (2014) ..................................................................... 2

Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.,
729 F.3d 99 (2d Cir. 2013) .............................................................................. 1

Longmire v. Wells Fargo Bank, N.A.,
(No. Dist. Tex. Dallas Div. 2017) ................................................................. 6

ii

McCarthy v. Manson,
714 F.2d 234 (2d Cir. 1983)........................................................................ 2

Mikol v. Barnhart,
554 F. Supp. 2d 498 (S.D.N.Y. 2008)........................................................ 1

Murphy Marine Services, Inc. v. Dole Fresh Fruit Company, et al,
20-CV-00025 (D. Del. March 3, 2021)...................................................... 18

Oganesyan v. Am. Airlines Cargo,
13-CV-6190 2013 WL 6229173, at 2* (C.D. Cal. 2013) ......................... 8

Radial Engines, Ltd. v. YRC Freight, Inc.,
19-cv-00841-PRW (W. Dist. Okla. 2/19/2021) ....................................... 4

Ronzani v. Sanofi, S.A.
899 F. 2d 195 (2d Cir. 1990)...................................................................... 5

Seagate Logistics, Inc. v. Angel Kiss, Inc.,
699 F. Supp. 2d 499 (E.D. N. Y. 2010) .................................................... 15

Smith v. Bank of Am., N.A.,
615 F. App'x 830 (5th Cir. 2015)............................................................... 6

Sun Coast Merchandising Corp. v. Hecny Trans.,
2:20-CV-11007 (Cent. Dist. Ca. 2/22/21)................................................. 7

USX Corp. v. Barnhart,
395 F. 3d 161 (3d Cir. 2004)...................................................................... 18

Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,
956 F.2d 1245 (2d Cir. 1992)..................................................................... 2

## PRELIMINARY STATEMENT

Plaintiff, New Fortune, Inc. ("NFI" or "Plaintiff"), by and through its counsel, Louis J. Maione, Esq., submits this Memorandum of Law in Reply to the opposition of both Aeroflot Airlines ("Aeroflot") and Apex Logistics International (CN), Inc. ("Apex") (collectively the "Defendants") to Plaintiff's Motion for Reconsideration ("Motion") of this Court's Order and Opinion ("Order" or "Decision"),  dated January 29, 2021, whereby NFI's Amended Complaint was dismissed.

## LEGAL STANDARD FOR REVIEW

Plaintiff previously has proffered to the Court adequate authority that a motion for reconsideration should be granted where the Court has overlooked controlling decisions of law or factual matters that were "put before it on the underlying motion...and which, had they been considered, might have reasonably altered the result." *Mikol v. Barnhart,* 554 F. Supp. 2d 498, 500 (S.D.N.Y. 2008) (quoting *Greenwald v. Orb Commc'ns & Mktg., Inc.,* No. 00 Civ. 1939 (LTS) (HBP), 2003 WL 660844, at *1 (S.D.N.Y. Feb. 27, 2003)). Under such circumstances, a motion for reconsideration may be granted *"to correct a clear error or prevent manifest injustice." Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.,* 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir. 1992)). Whether to grant or deny a motion brought under Local Rule 6.3 is within "the sound discretion of the district court." *In re Gildan Activewear, Inc. Sec. Litig.,* No. 08 Civ. 5048(HB), 2009 WL 4544287, at *2 (S.D.N.Y. Dec. 4, 2009); *see also McCarthy v. Manson,* 714 F.2d 234, 237 (2d Cir. 1983).   Generally speaking, the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014); see also 5 C.

Wright & A. Miller, *Federal Practice and Procedure* §1219 (3d Ed. 2020).   "[To] survive a

motion to dismiss under *Twombly* and *Iqbal,* a plaintiff need only "plead facts sufficient to show"

that the claims asserted have *"substantive plausibility"* by stating "simply, concisely, and directly

events" that Plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.,* 574

U.S., 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1),

(e)); *accord N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare,* 781 F.3d 182, 191 (5th

Cir. 2015) ("To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed

factual allegations, but it must provide the plaintiff's grounds for entitlement to relief —

including factual allegations that, *when assumed to be true, raise a right to relief* above the

speculative level."

### Defendants' Opposition

Plaintiff's reply to the opposition of the Defendants to its Motion will be specific as to

each Defendant where applicable and, in general, as to their blanket opposition.

Anything to the contrary notwithstanding, and contrary to Defendants' position, this

Motion *is not an attempt to relitigate any issues*. Conversely, it primarily is directed at the

Court's oversight that Plaintiff had not pleaded nonperformance of a contract; nonperformance

*is not preempted by the Montreal Convention* ("Convention") and, therefore, the Court

overlooked controlling law. *In Nigeria Chartered Flights*, 520 F. Supp. 2d 447 (S.D.N.Y. 2007).

Concededly, the Plaintiff may have pleaded nonperformance, and labeled as such, but a breach

of contract cause of action is available to claim nonperformance of a contract. More importantly,

the Motion is also directed at the Court's having closed the case and forestalling Plaintiff from

recovery under the Montreal Convention, if that treaty is the only available remedy available to

Plaintiff as the Court in its Decision found that the Convention preempted Plaintiff's claims; and

despite that Plaintiff raised the Convention as an alternative right to federal jurisdiction in its

First Amended Complaint ("FAC") the Court closed the matter.

**Amending the Pleadings**

In a recent decision in a case of which the facts were governed by the Carmack

Amendment ("Carmack"), which regulates the relationship of shipping companies and the

shipper of goods by truck, while generally limiting the liability on the part of the common carrier

much as the Montreal Convention does for air carriers, styled, *Radial Engines, Ltd. v. YRC*

*Freight, Inc*., 19-cv-00841-PRW (W. Dist. Okla. 2/19/2021), the plaintiff, Radial Engines Ltd.

("Radial"), brought an action for breach of contract and negligence. At some point, plaintiff

conceded that Carmack preempted state law on the subject of carrier liability, including state law

claims such as those pleaded and that, therefore, to the extent that Radial asserted those common

law claims they failed as a matter of law.

The Court in *Radial, supra*, concluded, however, that Radial's concession *did not mean*

*that it failed to "state any claim at all."* Recognizing that it had made a prima facie case for

recovery under Carmack, the District Court opined that it was "more than adequate to state a

claim at this early stage," opining that "[the] fact that Radial's Petition does not expressly state it

is asserting a claim under … Carmack…*is of no consequence" as the federal rules have*

*abolished the restrictive theory of pleadings, c*iting *Johnson v. City of Shelby, supra*, with

authority. The District Court further determined that *it was unnecessary to set out a precise legal*

*theory for relief.*

Here, Defendants, and Aeroflot in particular, cannot be heard to complain if this Court

were to allow Plaintiff to amend its FAC and replead even if only under the Montreal

Convention as the Plaintiff, at ¶9, page 3 of the FAC, clearly asserted that, if the Court

determined that if it was the Convention which applied, *it still had jurisdiction over the matter*.

In other words, it is ineluctable that Plaintiff was speaking to alternatively plead under the Convention were the Court to find that the state law claims did not provide an avenue to recovery, though Plaintiff does not concede the latter to be the case because it contends that at least one state claim is not preempted by the Convention. And, clearly, Plaintiff pleaded a cognizable claim were the Convention to apply because the Court upheld Defendants' position that the Convention applied here.

Defendants in moving to dismiss argued *ab initio* that *only* the Convention applies to the facts of this matter, as the Court agreed in its Decision, and that the Plaintiff's damages are restricted to the limits of the Convention. Certainly, the Defendants cannot now claim surprise were the Court to allow Plaintiff to replead, albeit if only pursuant to the Montreal Convention. "A party opposing a motion to amend…*bears the burden of establishing* that an amendment would be futile." *Bonsey v. Kates*, 13-Cv-2708 (RWS) (S.D.N.Y. 2013 WL 4494678) at 8*; *Brook v. Simon & Partners*, LLP, 783 Fed. Appx. (2d Cir. 2019) (Summary Order concluding that district court *abused its discretion by directing case be closed without giving plaintiff effective opportunity to amend*); *Ronzani v. Sanofi*, S.A. 899 F. 2d 195 (2d Cir. 1990).

While Plaintiff contends otherwise as to its entitlement to recovery, i.e., it has available to it those state law claims in respect of nonperformance by Defendants, which is not preempted under the Convention, it most assuredly has pleaded a cause of action recognized under the Convention even if unarticulated as such. By dismissing the Complaint, and closing the case, the Court precluded the Plaintiff from any recovery under the Convention for damages and/or delay irrespective of Defendants' vociferous arguments that the Convention is the exclusive remedy available to Plaintiff.

Closing the case can only be interpreted as the Court having decided not only that the Convention applied, but in essence that Defendants were entitled to summary judgment because Plaintiff could not even recover damages under the Convention for delay or the damage to the cargo. With all due respect, it is suggested that such a result –summary judgment—was not what this Court intended, nor should it have on a motion to dismiss.

The United States "Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the `factual allegations' in the complaint." *Smith v. Bank of Am., N.A.,* 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson,* 135 S. Ct. at 347; and the Federal Rules of Civil Procedure *"do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted,* Johnson, 135 S. Ct. at 346." *Longmire v. Wells Fargo Bank, N.A.,* (No. Dist. Tex. Dallas Div. 2017). It would be a manifest injustice not to allow Plaintiff to replead under these circumstances.

As the Court aptly recognized in its Decision, neither the Second Circuit nor the Supreme Court ultimately determined that the Montreal Convention completely preempts state causes of action.[1] The Supreme Court has identified a very narrow group of issues completely preempted by federal law; National Labor Relations Act cases, possessory interest of Indian tribes to land matters, ERISA and usury claims. *Irabor v. Lufthansa*, 427 F. Supp. 2d 222, 230-231 (D. Mass. 2019). This matter is not one of them, and this Circuit has not determined that it does.

In a recent action decided in the Central District of the District of California, involving, coincidentally, the loss of 360 cases of N-95 masks sourced from Shanghai by the Plaintiff, the defendant removed the matter from state court to the District Court to avail itself of the preemptions of the Convention. The Plaintiff argued, *inter alia*, that the Convention did not

---

[1] Most Circuit Courts, including the Second Circuit, along with the Supreme Court have failed to reach a decision unequivocally saying otherwise.

apply as the defendant was a freight forwarder, not an air carrier, and that the Convention did not completely preempt the plaintiff's state law claims. *Sun Coast Merchandising Corp. v. Hecny Trans.*, 2:20-CV-11007 (Cent. Dist. Ca. 2/22/21).

In *Sun Coast, supra*, the Court recognized that there is a question "of whether the Montreal Convention *completely preempts state law causes of action*." *Sun Coast* at p.5, pp. 6-9. Defendants here, *as in Sun Coast, supra*, have conflated federal preemption and complete preemption. The fact that individual claims may be preempted does not mean that the entire field is preempted, and the defense of claim preemption does not convert a complaint brought under state law into one arising under federal law.

Breach of contract for nonperformance is not specifically preempted by the Convention. *Oganesyan v. Am. Airlines Cargo*, 13-CV-6190 2013 WL 6229173, at 2* (C.D. Cal. 2013), citing

The plain language of the Montreal Convention also runs counter to Defendants' position. Article 29 of the Montreal Convention specifically contemplates that liability may be based on other claims under contract or tort. Montreal Convention Art. 29 ("any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, *can only be brought subject to* the conditions and *such limits of liability as are set out in this Convention* ..."). This language indicates that although the Montreal Convention might limit the remedies available for state law contract or tort claims, it does not completely preempt those claims. *And, certainly does not preempt nonperformance of a contract---not a delay, but nonperformance.*

A number of authorities have held that cancellation of a flight *is tantamount to non-performance and non-performance is not preempted by the Convention* which then does not apply.

"At one end of the spectrum, we have the late arrival of a flight attributable to congestion at destination, weather, or similar reasons. On the other end of the spectrum, we have a flight cancelled all together. The former clearly constitutes delay; *the latter clearly constitutes non-performance of the contract of carriage."* Air and Space Law, Kluwer Law Int'l, 2010, "*Montreal v. Brussels: The Conflict of Laws on the Issue of Delay in International Air Carriage*," Dempsey, Paul S. and Johansson, Svante O., p.210.

"Article 19 of the Convention provides that compensation is available in the event of delay…*but there is no mention of flight cancellations in the Convention*. The significance of this distinction is that delays fall within the convention *but cancellations do not; they are treated as non-performance and to make a claim a passenger should bring an action for breach of contract."* "*Delay or Cancellation? Montreal or Not? Which is Right?"* Grant, David; *Travel Law Quarterly*, November 13, 2020. Moreover, while Article 19 explains that the carrier is liable for damage occasioned by delay, it shall not be liable if it *proves* "that it and its servants took all measures that could reasonably be required to avoid damage or that it was impossible to take such measures." In other words, the burden of proof necessary to avoid liability even under the Convention shifts to the Defendants.

Assuming, *arguendo*, that the Court agrees that the Plaintiff adequately laid out a claim under the Convention, even if not articulated as such, is there any question that Defendants proved nothing in the way of mitigation as enunciated in Article 19 of the Convention?

Here, we clearly have what only can be perceived by a reasonable and rational assessment as a cancellation of the Aeroflot flight. Not only did the Aeroflot flight not fly *directly to New York in two days per the contract of carriage* but it stopped dead in Moscow for

7

more than two weeks—hardly a direct flight and hardly what anyone would call a layover; *this flight was cancelled*!

In fact, unfortunately due to being at the pre-discovery phase of this matter, it is unknown if that same flight was later revivified or whether another differently numbered Aeroflot flight delivered the Masks to NY when they were finally delivered three weeks later. But just another question of fact for the trier of fact. [2]

"It has been suggested that delay constitutes substantially exceeding the time that would *normally be required for a complete transport* (fn. omitted). This seems to be in accordance with court cases where delay has been interpreted to mean 'abnormal delay.' "   *Montreal v. Brussels*, *supra*, at 211 citing, *Jahanger v. Purolator*, 615 F. Supp. 29, 33 (E.D. Pa. 1985) (abnormal delay resulting from the carrier's failure to take all appropriate measures to ensure departure and arrival at times specifically specified or indicated). Moreover, Article 13.3 of the Convention, "Delivery of the Cargo," states that, "…*if the cargo has not arrived after seven days after the expiration of the date on which it ought to have arrived, the consignee is entitled to enforce against the carrier the rights which flow from the contract of carriage."*

Conversely, Article 19 of the Convention *only provides a defense for the delay if the defendant can prove it took all measures that reasonably could be required to avoid the damage or that it was impossible to do so,* none of which has been proffered by Defendants other than to contend that that Convention preempts any state actions which could have been pleaded.

It cannot be anything more than a pure question of fact, not to be determined on a motion to dismiss, as to whether the putative "delay" in truth amounts to nonperformance of the contract of carriage, and whether the damages occasioned by the delay render the bailee, Apex, liable for

---

[2] With all due respect, it is suggested that neither the Defendants nor the Court can point to a situation where a flight, passenger, cargo or otherwise, sits in an airport for two weeks and is not considered a cancellation.

breach of the contract of bailment in failing to see to it that the Masks found their way onto a direct flight, destined to arrive in two days, and whether the delay—*the cancellation of the flight by Aeroflot*—amounts to nonperformance and, therefore, is a breach of contract under New York law for nonperformance.

In rendering its Decision, this Court, *inter alia*, relied, in part, on *Indemnity Ins. Co. v. Expeditors,* 382 F. Supp. 3d 302, 307, fn. (S.D.N.Y. 2019), for the proposition that the Convention preempts "state law claims *like those at issue here*." Conversely, the Court in *Indemnity*,  recognized that the two causes of action pleaded by the plaintiff were state claims, opining that the"… causes of action arising as a result of damage caused by an air carrier in international transport are completely preempted by the Convention for the Unification of Certain Rules for International Carriage by Air, commonly known as the "Montreal Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999 (entered into force on Nov. 4, 2003), reprinted in S. Treaty Doc. No. 106-45, 1999 WL 33292734.

As in *Indemnity,* however, if the claims at issue in this case fall under the Montreal Convention then they fall within the Court's "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," pursuant to 28 U.S.C. § 1331. *See Caterpillar Inc. v. Williams,* 482 U.S. 386, 393, 107 S. Ct. 2425, 96 L.Ed.2d 318 (1987) (*an action asserting remedies under state law arises under federal law if federal law "completely preempts" the cause of action). Indemnity* at 307-308.

While the Court in *Indemnity* opined that the Montreal Convention completely preempted the state law claims *it also concluded that the Plaintiff's claims, like those at bar, must be considered to have fallen under the Court's jurisdiction under the Montreal Convention* and

therefore further determined that the plaintiff there *had stated a cognizable cause of action*. Consequently, the Indemnity Court allowed the case to proceed under the Convention, which, at the very least, this Court should have done as well as opposed to closing the matter thereby cutting off the Plaintiff from any remedy. Which is precisely why the Court should grant Plaintiff leave to amend the FAC.

Accordingly, even if this Court in the case at bar remains unconvinced that a nonperformance of the contract occurred (respectfully, something it cannot do on a motion to dismiss) or that it was adequately pleaded, thereby giving rise to a state cause of action rather than a mere delay preempted by the Convention, Plaintiff at the very least should be allowed to amend the FAC and specifically plead the Montreal Convention as an alternative to the state law causes of action; thereby meeting the Court's jurisdiction although Plaintiff previously pleaded that jurisdiction in the FAC.[3]  See, e.g., *Johnson v. City of Shelby, supra.*

## Specific Opposition to Instant Motion

In opposition to the Plaintiff's instant motion, Aeroflot cites a number of cases for the proposition that the carrier's delay was preempted under the Convention even where the carrier was aware that the delivery of the shipment was time sensitive (Aeroflot Memorandum in Opposition, pp.3-4). Most of those cases either were dismissed on the issue of inadequate notice to the carrier or where the carrier proffered a meritorious excuse for the delay. [4]

Moreover, Aeroflot proceeds to now incredibly contend that it was not a party to the contract of carriage and that, despite the Plaintiff's having pleaded an agency relationship between Apex and Aeroflot, Plaintiff cannot base its action on that agreement. Conversely, the

---

[3] The FAC clearly indicates that the Court had jurisdiction over the matter under the Montreal Convention. FAC, p.9.

[4] See, O'Gray v. British Airways, PLC and Oneaynusi v. Pan Am. for example, cited by Aeroflot at pp.2-3.

Second Circuit has held *freight forwarders to be agents of the carrier at least for the purpose of entering into a contract for carriage on its behalf. In Re Nigeria*, 520 F. Supp. 2d 447, 463, citing *Commercial Union v. Alitalia,* 347 F. 3d 448, 462 (2d Cir. 2003) (*incontrovertible that freight forwarder was acting as agent for airline).*

Aeroflot continues at pp.4-6 of its Memorandum, *inter alia*, that Plaintiff's allegation of damages falls under the substantive scope of Article 18 of the Convention. If that is Aeroflot's argument here then there can be no argument of surprise and Aeroflot cannot argue that amending the FAC to alternatively plead a Convention cause of action would be futile as it acknowledges that damage to the cargo is compensable under Article 18 of the Convention, just as it argued in its motion to dismiss the FAC that the matter revolved exclusively on the Convention. [5] The matter therefore should not have been closed as damages under the Convention needed to be resolved.

### Apex's Memorandum

In its opposition to the Motion, Apex makes some curious arguments. The first, is that Apex didn't promise anything by way of its Air Bill ("Air Bill") and its freight invoice and that Apex was not in a position to guarantee shipment in light of the pandemic. Without getting into the specifics of what Apex, in return for the consideration of the freight charges paid by NFI, are we to understand that a party to a contract, cognizant of extraneous forces which "may" impede its ability to condition its promise in exchange for consideration, now has some tortured legal argument that it was not in a position to make that contractual promise? Then why do it?

In other words it made a false or illusory promise to NFI never knowing, thinking or believing that it could comply? Is this the legal argument being advance by the bailee? Are we

---

[5] While Aeroflot also alludes to the original Complaint in its opposition, it is axiomatic that once a Complaint is amended, either as of right or as a result of the Court's permission, the earlier pleading essentially is deemed never to have existed and cannot be referred to as such.

now to understand that the laws of contract are being suspended because a corporate party to a contract makes a promise that it should not have or that it knew it couldn't keep? Is this the excuse for nonperformance by selecting a carrier which did not have a direct flight and no schedule arrival date?

Apex then further argues that plaintiff "notably" did not attach any documentation which could be read as a promise by Apex to deliver the goods by a certain date. Of course, other than the two Air Bills appended to the FAC, it didn't append anything else because, as pleaded in the FAC, Apex *refused to provide the back of the Air Bills* as well as the Air Bills of Aeroflot, if ever they existed. (See pp.2-3 of Apex Memorandum). Please also see exhibits to FAC.

Apex then continues that cases cited by Plaintiff as to *nonperformance* are inapposite because they involve cases of "bumping" and the passengers in those cases received no benefit, obviously inferring that NFI did receive consideration and therefore had no claim.

Nonetheless, as cited in Plaintiff's Memorandum in support of the motion, "nonperformance" has a legal dictionary definition *not restricted* to "bumping" cases, or to cargo cases, or for that matter restricted exclusively to transportation matters. *Nonperformance, which is not preempted by the substantive scope of the Convention, is a question of fact to be determined by the trier of fact.* And, those cases cited by Plaintiff are instructive where District Courts arrived at reasoned conclusions how and why nonperformance of the "contract of carriage" had occurred and, therefore, the nonperformance was not preempted by the Montreal Convention; exactly the point proffered by Plaintiff. *Seagate Logistics, Inc. v. Angel Kiss, Inc*., 699 F. Supp. 2d 499, 506-507 (E.D. N. Y. 2010).

Unfortunately, much of the rest of Apex' argument is circuitous reasoning that misses the point.

It does argue, however, that "[a]ssuming Plaintiff's allegations regarding the 6 cartons [sic, crates] are true, the result is a claim for cargo damage under the Montreal Convention, Article 18." Bravo, bravo! Because on a motion to dismiss that is exactly what the Court is expected to do; assume that the allegations made by the Plaintiff are true. And, if a claim is available under the Convention, the Court should not have closed the matter but should have allowed the Plaintiff to amend the FAC.

Apex, like Aeroflot, recognizes, if not concedes that at the very least the Montreal Convention applies here. Although since it does not preempt nonperformance, which is a pure question of fact not to be decided on a motion to dismiss, there can be no surprise whatsoever to either Defendant, especially in light of their arguments concerning the preemptions of the Convention; as such the Court should not have closed this matter and that, if the Court did not believe that Plaintiff pleaded a case governed by the Convention, it should have granted leave to submit an amended pleading.

In *Bader v. Swissport, USA, Inc*. 18-cv-06390 (E.D.N.Y. 9/30/2020) a recent case decided in the District Court for the Eastern District of New York in which there was an issue of whether human remains were the equivalent of  "cargo" within the meaning of the Montreal Convention, the Court decided in the affirmative. Both parties there agreed that *nonperformance falls outside of the scope of Article 19 of the Convention*; the Bader Court was confronted with deciding whether there was a complete nonperformance or a delay.

In rendering its decision the Bader Court opined that, "[in] contrast, where a defendant fails to perform its obligation *and fails to offer alternate transportation*, a plaintiff's claims are *not subject to the preemptive effect of Article 19. [As]* In re Nigeria Charter Flights Contract Litig., 520 F. Supp.2d 447 (E.D.N.Y. 2007), for example, defendant World Airways, Inc. ceased

13

operations between Nigeria and the United States, canceling future flights and stranding

passengers who had flown already the outbound legs of their round trips. Id. at 450. The court

found that plaintiffs' claims were not preempted by Article 19 of the Warsaw Convention,

because 'plaintiffs have shown that World [Airways, Inc.] simply refused to fly them, without

offering alternate transportation.' Id. at 454. Here, it remains unclear whether Plaintiffs chose to

secure substitute travel for the decedent's remains or whether Defendants offered alternate

transportation for the remains." Bader at p. 15. Concluding that there was *no evidence that that*

*defendant offered alternative means of transportation, an evidentiary hearing was required to*

*develop the necessary facts to determine the threshold issue of nonperformance* in Bader.

Similarly, where there is no indication that defendant offered alternative arrangements, it

failed to show that the preemption of Article 19 applies. *Irabor v. Lufthansa Airlines*, 427 F.

Supp. 2d 222, 232-233 (D. Mass. 2019).

In the case at bar, as pleaded in the FAC, within a matter of a day or two Plaintiff made

numerous inquiries about the whereabouts of the remainder of the Masks after they were failed

to be delivered timely. Neither, Apex nor Aeroflot offered any reasonable excuse as to the

location of the Masks or when they were to be delivered and, more importantly, failed to offer

alternative means of transportation for Plaintiff to obtain the Masks, thereby creating an issue of

fact as whether we have a case of nonperformance in the case at bar. [6]  Apex's argument that

NFI ultimately received the Masks is disingenuous at best, and insulting at worst, for that

argument taken to its logical conclusion would dictate that irrespective of when a consignee

---

[6] Apex proffers a unique argument insofar as it contends that due to the pandemic it had no business promising to
deliver the Masks in two days and on a direct flight to New York. On the other hand, aware that it was transporting
surgical masks during a raging pandemic, and aware that its own Air Bill called for a two day delivery on a direct
flight, how is it that neither Apex nor Aeroflot would respond to Plaintiff's inquiries, nor offer alternative
transportation when the Aeroflot flight obviously was cancelled knowing the urgency of distributing the much-
needed Masks?

received its goods or cargo it's good enough; three weeks, three months, three years. It doesn't matter so long as the cargo ultimately finds its way to the consignee; a preposterous argument.

## SUMMARY

As stated herein above, and in accordance with the teachings of both the U.S. Supreme Court and the Second Circuit Court of Appeals that leave to amend pleadings should be freely given, the Court should have granted Plaintiff the opportunity to amend the FAC if it concluded that nonperformance had not been adequately pleaded by Plaintiff as subsumed in those causes of action which pleaded breach of contract and breach of bailment; in addition, concluding that the Montreal Convention provides complete preemption to Plaintiff's state law claims, the Court should not have closed the matter but should have allowed Plaintiff the same leave to amend the FAC as Defendants argued that the Montreal Convention exclusively applied and any damages which Plaintiff could recover were limited thereunder.

It would be manifest injustice to deprive Plaintiff of any avenue of recovery because a cause of action may have been unartfully pleaded especially since case law supports that nonperformance is not exempted by the Convention and, therefore, the only available remedy would be a state law claim; and since the Court determined that the Convention is the only remedy available it also would be an injustice to have closed the matter.

And, as the Supreme Court has taught, "a court should freely give leave to amend when justice so requires" especially when its claim, like that of nonperformance, has merit. *Murphy Marine Services, Inc. v. Dole Fresh Fruit Company,* et al, 20-CV-00025 (D. Del. March 3, 2021) in which the District Court, citing *USX Corp. v. Barnhart*, 395 F. 3d 161, 166 (3d Cir. 2004), and FRCP 15 (a), allowed leave to plaintiff to file second amended complaint *after deadline for filing amended pleadings passed,* where amendment would not unfairly prejudice defendant's ability to defend the lawsuit.

15

Certainly, Defendants will not be prejudiced in the defense of the claims raised by an amended pleading in this matter as stated herein.

## **CONCLUSION**

For the reasons stated herein, the least of which is that leave to amend should be freely granted, Plaintiff's motion for reconsideration should be granted and the Plaintiff allowed to re-plead as per the teachings of the U.S. Supreme Court and the Second Circuit Court of Appeals.

March 5, 2021
New York, N.Y.                                    LOUIS J. MAIONE, P.C.

By: *Louis J. Maione*
Louis J. Maione, Esq. (8589)
303 East 57th Street, 30th Fl.
New York, N.Y. 10022
(917) 549-5693
Attorney for Plaintiff

16